**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (93383)                                        *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAVON FORD,** | : | **Civil Action No.** |
| 5741 N 17th Street | : | |
| Philadelphia, PA 19141 | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **COMMUNITY COLLEGE OF** | : | |
| **PHILADELPHIA,** | : | |
| 1700 Spring Garden Street | : | |
| Philadelphia, PA 19130 | : | |
|     Defendant. | : | |

### CIVIL ACTION

Plaintiff, Shavon Ford (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, brings this civil action against Defendant, Community College of Philadelphia (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff is an adult individual residing at the above captioned address.

2. Upon information and belief, Defendant is a community college with a location and corporate headquarters at 1700 Spring Garden Street, Philadelphia, PA 19130.

3. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

5. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

6. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

7. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

8. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§

1391(b)(1) and 1391(b)(2) because the Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff exhausted his administrative remedies under Title VII.

10. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and retaliation against Defendant.

11. The Charge was assigned Charge Number 530-2022-04618 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

12. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") dated December 13, 2022. Plaintiff received the Right to Sue notice by mail.

13. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

14. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter.

15. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

16. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

17. On October 4, 2021, Defendant hired Plaintiff in the position of Associate VP of Strategic Initiatives and Community Engagement.

18. Plaintiff was well qualified for his position and performed well.

19. When Plaintiff was hired by Defendant, he lived in northern New Jersey.

20. Plaintiff was fine with making a substantial commute during his probationary period.

21. David Thomas, VP of Strategic Initiatives and Community Engagement, urged Plaintiff to relocate closer to Philadelphia prior to starting the job and he said it was something Guy Generals, President, wanted too.

22. Therefore, Plaintiff began the process to purchase a home.

23. Mr. Thomas invited Plaintiff to stay at his residence, while he was looking for a residence closer to Defendant.

24. Plaintiff declined Mr. Thomas' offer and felt that it was unprofessional.

25. At the start of Plaintiff's employment, Mr. Thomas began to pressure Plaintiff to socialize with him outside of work and drink alcohol together.

26. Additionally, Defendant was under social distancing protocols due to COVID-19 throughout Plaintiff's employment.

27. Mr. Thomas proceeded to inform Plaintiff that it was part of Plaintiff's job duties to socialize with him outside of work and that he had to build a relationship with him.

28. Plaintiff felt uncomfortable with Mr. Thomas' invitations and interpreted that he had romantic intentions with his invitations.

29. Plaintiff declined Mr. Thomas' advances.

30. In or around early November 2022, shortly after Plaintiff rejected Mr. Thomas' advances, he proceeded to retaliate against Plaintiff by giving him a hard time for not answering emails immediately while he was on the onboarding process, and instructed him to respond to every email that he received.

31. Mr. Ford spent considerable time in Mr. Thomas' office for meetings, which limited his email access.

32. Mr. Thomas did not provide Plaintiff with the support necessary for his position.

33. Unbeknownst to Plaintiff, Mr. Thomas emailed Lisa Hutcherson, Associate Vice President of Human Resources, to discuss Plaintiff's upcoming 90-day performance evaluation on November 19, 2021.

34. On November 28, 2021, Mr. Thomas emailed Ms. Hutcherson that he wished to discuss extending Plaintiff's 90-day probationary period with her.

35. However, at no time did Mr. Thomas or Human Resources inform Plaintiff that there were issues with his performance and/or that his 90-day probationary would be extended.

36. In addition, Mr. Thomas continued to invite Plaintiff to socialize with him outside of Defendant and consume alcohol.

37. Plaintiff denied Mr. Thomas' advances.

38. Plaintiff did not report Mr. Thomas' sexual harassment or retaliatory conduct because he feared retaliation.

39. Mr. Thomas frequently stated to Plaintiff that he was friends with Ms. Hutcherson.

40. Plaintiff took this to mean that Human Resources would protect Mr. Thomas if he made any complaints about him.

41. In or around early December 2022, Mr. Thomas assigned Plaintiff three (3) grants to his caseload.

42. Two (2) of these grants were Upward Bound Grants due on January 31, 2022.

43. The Upward Bound Grants were being spearheaded by the Upward Bound Director with additional support from Defendant's Grant Coordinator, a Grant Consultant, and Plaintiff.

44. The third grant was due on January 13, 2022.

45. Plaintiff took this as retaliation because his grant was the shortest deadline, the Director was not tasked with spearheading the grant, the grants office was not providing support, and there was no consultant assigned.

46. Plaintiff felt like Mr. Thomas set him up for failure due to his denial of his advances.

47. On December 23, 2021, Plaintiff met with Mr. Thomas for his 90-day Performance Evaluation.

48. Mr. Thomas instructed Plaintiff to continue to stay on top of his email communication.

49. Mr. Thomas then informed Plaintiff that he had to make time in order to socialize with him outside of work and that it was part of his job duties to do so.

50. Plaintiff took this as a threat to his position if he did not do so.

51. In addition, Plaintiff took this as Mr. Thomas delaying submitting his 90-day performance evaluation until he went out with him.

52. On December 30, 2021, Plaintiff went out to dinner with Mr. Thomas and paid for it per Mr. Thomas' request.

53. Later that night, Mr. Thomas informed Plaintiff that his work was of the highest quality and that he wanted to continue to work together.

54. On January 10, 2022, Plaintiff informed Mr. Thomas of the status of the grant.

55. Mr. Thomas proceeded to cease communication with Plaintiff after this.

56. On January 14, 2022, Mr. Thomas issued Plaintiff a written discipline for not performing satisfactorily during his probation period.

57. Mr. Thomas noted that he had informed Plaintiff that he would be placed on probation on December 30, 2022.

58. This was the same day that he went out to dinner with Mr. Thomas per his request.

59. Later that evening, Mr. Thomas texted Plaintiff praising his performance.

60. The allegation that Plaintiff did not perform satisfactorily during his probationary period was not true.

61. On January 28, 2022, Mr. Thomas terminated Plaintiff for alleged poor performance.

62. Plaintiff did not have poor performance.

63. It is Plaintiff's position that he was sexually harassed and retaliated against for declining Mr. Thomas' sexual advances in violation of Title VII and the PHRA.

## COUNT I
## SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

64. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

65. Taken together, the acts outlined above constitute a hostile work environment based on sex.

    a. Plaintiff suffered intentional discrimination because of his sex.

    b. Such discrimination was severe, pervasive, and/or regular.

    c. Such discrimination detrimentally affected Plaintiff.

    d. Such discrimination would have detrimentally affect a reasonable person of the same protected class in Plaintiff's position.

66. The unlawful employment practices outlined above were intentional

67. Plaintiff suffered tangible employment actions as alleged herein.

68. The harasser was Plaintiff's supervisor.

69. Defendant knew or reasonably should have known of the sexual harassment.

70. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

71. As a result of Defendant's actions and conduct, Plaintiff has suffered emotional pain and distress, mental anguish, and loss of enjoyment of life's pleasures.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT II
### SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
### PENNSYLVANIA HUMAN RELATIONS ACT

72. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

73. The foregoing conduct created a sexually hostile work environment for Plaintiff.

74. Plaintiff suffered intentional discrimination because of his sex.

75. Defendant subjected Plaintiff to unwelcome conduct of a sexual nature that was severe and/or pervasive.

76. The harasser was Plaintiff's supervisor.

77. The discrimination detrimentally affected Plaintiff.

78. Plaintiff suffered tangible employment actions as alleged herein.

79. As a result of Defendant's conduct as aforementioned, Plaintiff has suffered damages as set forth herein.

80. Defendant knew or reasonably should have known of the sexual harassment.

81. Defendant failed to exercise reasonable care to prevent and promptly correct the harassing behavior.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III
## RETALIATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

82. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

83. Plaintiff engaged in activity protected by Title VII.

84. Plaintiff declined Mr. Thomas' sexual advances.

85. Thereafter, Defendant took adverse employment action against Plaintiff, including, but not limited to, termination.

86. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV
## RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

87. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

88. Plaintiff engaged in activity protected by the PHRA.

89. Plaintiff declined Mr. Thomas' sexual advances.

90. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

91. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment actions.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this

Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Shavon Ford, requests that the Court grant him the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages;

(c) Emotional pain and suffering;

(d) Reasonable attorneys' fees;

(e) Recoverable costs;

(f) Pre and post judgment interest;

(g) An allowance to compensate for negative tax consequences;

(h) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII and the PHRA.

(i) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(j) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(k) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: March 13, 2023          **By:**   */s/ David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*